UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

C.A. NO.: 04-CV-40054

GERALD F. RICHARDS, )
    Plaintiff )
 )
v. )
 )
SOUTHBRIDGE POWER & THERMAL, LLC., )
    Defendant )

**DEFENDANT SOUTHBRIDGE POWER & THERMAL, LLC'S, MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

This case arises out of an alleged January 23, 2001 work place accident in which the plaintiff claims his forearm was crushed by piping he was installing. Defendant Southbridge Power & Thermal, LLC, ("Southbridge") did not own the construction site and Southbridge had no responsibility regarding job site safety. Despite having no evidence that Southbridge breached some alleged duty of care – let alone any evidence that Southbridge even owed plaintiff a duty of care – plaintiff continues to press his claims against Southbridge.

Allowing Southbridge's motion for summary judgment is proper because, as discussed in detail below, Southbridge simply owed plaintiff no duty of care. To the extent Southbridge was involved in the construction project, it had no responsibility for safety on the job and no evidence suggests that it had the requisite control of the job site to saddle it with any duty of care to the plaintiff. *See, e.g.,*

*Cheschi v. Boston Edison Co.*, 39 Mass. App. Ct. 133, 135-138 (1995); *Corsetti v. Stone Co.*, 396 Mass. 1, 10 (1985); *Foley v. Rust International*, 901 F.2d 183, 184-185 (1st Cir. 1990). Accordingly, Southbridge requests that this Court allow summary judgment in its favor as to all counts of the plaintiff's complaint.

## II. Statement of Undisputed Facts

On or about July 1998, Southbridge leased the premises at issue from Southbridge Associates Limited Partnership ("SALP"), which is not a defendant in this case. (*See* July 1998 Lease, attached hereto as Exhibit A.) Under the terms of the lease, SALP was the landlord. (*See id.* at ¶ 1.01(q).) SALP owned the building and all its original infrastructure, which had long been a power generation facility. (*See* April 26, 2005 deposition of Thomas H. Shepard of Southbridge at 7:24 to 8:20, attached hereto as Exhibit B.)

On or about June 6, 2000, Southbridge entered into a contract with Waldron - Abington, LLC ("Waldron") for Waldron to act as contractor for the construction of additional power units on the premises it leased from SALP. (*See* June 6, 2000 Contract, attached hereto as Exhibit C.) Waldron was a special purpose company formed specifically for the Southbridge project - it was a joint venture between Waldron Engineering and Abington Constructors ("Abington"). (*See* Exhibit B at 24:22 to 25:4.) Following completion of the project, Southbridge now owns the new equipment at the

2

location installed by Waldron but does not (and never did) own any other part of the physical facility or land. (*See* Exhibit B at 9:7-13, 60:2-12.)

By means of the contract between Waldron and Southbridge, Waldron was to perform "engineering and design services, procurement and support services, construction services, commissioning, startup and testing and operator training services to make such facility fully operational . . . ." (*See* Exhibit C at 1; *see also* ¶ 3.1)

The contract contained the following pertinent clauses:

Article 2 - Relationship of Owner, Contractor, Subcontractors and Vendors

2.5 *Owner Not Responsible for Acts of Contractor.* The Owner will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety or security precautions and programs in connection with the Work or performance by Contractor of its warranty obligations, and Owner will not be responsible for Contractor's failure to carry out the Work or its warranty obligations. Owner will not be responsible for the acts of [sic] omissions of Contractor, any Subcontractor, or any of their respective agents, performing any of the Work. No inspections or review of documentation, or failure to inspect or review documentation, by Owner shall be a waiver of Contractor's obligations, or be construed as approval or acceptance of the Work or any part thereof.

Article 3 - Contractor's Responsibilities

3.5 - *Control of the Work.* Subject to the provision of this Agreement, the Contractor shall be solely responsible for all construction means, methods, techniques, sequences, procedures, and safety and security programs in connection with the performance of the Work . . . .

3.8 - *Safety.* The Contractor shall be responsible for the safety of all persons and property in connection with the Work. The Contractor shall

3

>       initiate and maintain reasonable safety
>       precautions and programs to conform with
>       applicable provisions of federal, state, and local
>       safety laws . . . .

Under the contract, Southbridge retained a general right to review design plans and monitor the work. (*See* Exhibit C at ¶¶ 2.3 & 2.4.) Plaintiff admits that Waldron was responsible for overall safety at the job site. (*See* Plaintiff's Motion to Amend Complaint to Add Party Defendant at ¶ 3, attached hereto as Exhibit D.) On or about June 9, 2000, Southbridge (under its former name, Acetex Energy Holdings, LLC) contracted with Aradia Management, LLC ("Aradia") to act as project manager for the Southbridge job. (*See* Consulting Agreement, attached hereto as Exhibit E.) Under the terms of the Aradia contract, Aradia was to, among other things, make weekly site visits and attend progress meetings. (*See id.* at ¶ 1(b).)

During the construction work, Southbridge had personnel on site to run the power plant already in operation. (*See* Exhibit B at 31:19 to 32:14.) The particular work being performed by plaintiff on the job site was through his employer, Abington – part of the joint venture, Waldron – Abington, LLC. (*See* Plaintiff's April 29, 2005 Deposition Transcript 63:16-18, attached hereto as Exhibit F.) Abington was working under the contract executed between Southbridge and Waldron. (*See* May 9, 2005 Deposition of Robert Bent at 16:18 to 17:4, attached hereto as Exhibit G.)

Timothy A. Davison was the general supervisor for

4

Abington on the job site and was present on any day that Abington's crew was working. (*See* May 9, 2005 Deposition Transcript of Timothy A. Davison at 9:23 to 10:4, attached hereto as Exhibit H.) Abington was the only entity that supervised its crews. (*See id*. at 17:12-24.) Plaintiff was injured by pipes that allegedly came loose from some rigging. (See Complaint at ¶ 9, attached hereto as Exhibit I.) According to Davison, the plaintiff did the rigging for the pipes that allegedly injured him. (*See* Exhibit H at 25:15-17.)

Robert Bent was the Abington Project Manager for the job at issue. (*See* Exhibit G at 10:7-11.) Abington drafted the job site safety plan. (See id. at 24:4-24; *see also* Accident Prevention Plan, attached hereto as Exhibit J.) According to Mr. Bent, only Abington would have done a safety plan for pipe rigging. (*See* Exhibit G at 24:24 to 25:9.) Abington's Accident Prevention plan was in line with the terms of the June 6, 2000 contract and specifically noted that it was responsible for "initiating, maintaining and supervising safety precautions and programs in connection with work at the site." (*See* Exhibit J at 1.) Plaintiff attended weekly safety meetings hosted by Abington. (*See* Exhibit F at 66:5-19.)

Plaintiff alleges that Southbridge was negligent because: "[i]t is my understanding that Southbridge . . . was the general contractor for the job and therefore was responsible for safety at the job site." (*See* Plaintiff's

5

Answers to Interrogatories at No.13, attached hereto as Exhibit K.) Despite that allegation, at his deposition, plaintiff could not even state who Southbridge is. (*See* Exhibit F at 64:22 to 65:1.) When asked the basis for his stating that Southbridge hoisted the pipes at issue, plaintiff replied "I don't know." (*See id.* at 154:20-22; *see also id.* at 74:2 to 75:10.) At his deposition, plaintiff could not identify who had connected to the rigging the pipes that allegedly injured him. (*See id.* at 77:12-20, 82:3-5.) At the time the plaintiff was injured, he had been instructed by an Abington employee to perform the particular task. (*See id.* 106:21 to 107:2.)

### III. Summary Judgment Standard

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party demonstrates that the party who bears the burden of proof lacks sufficient evidence to establish an essential element of his claim, then the opposing party must come forth with evidence -- beyond the pleadings in the case and by affidavit, answers to interrogatories, depositions, or similar materials -- demonstrating that a genuine, disputed issue of material fact nevertheless exists, and that the evidence merits submitting that issue to a jury. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). If the opposing party fails to come forward with sufficient

evidence to close the apparent gap in his case, then summary judgment is appropriately entered. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

### IV. Argument

**A. Southbridge Is Entitled to Summary Judgment Because It Did Not Maintain Sufficient Control Over the Job Site.**

The primary question in this case is whether Southbridge maintained sufficient control over the work to impose a duty of care upon it. *See, e.g., Corsetti v. Stone Co.*, 396 Mass. 1, 10 (1985); *Cheschi v. Boston Edison Co.*, 39 Mass. App. Ct. 133, 135-138 (1995). In reviewing the contracts and the testimonial evidence, it is clear that Southbridge retained no such control and it cannot, under any circumstances, be liable to plaintiff. Indeed, the very basis for plaintiff's complaint - that Southbridge was the general contractor and responsible for job site safety - is without a scintilla of merit. (*See* Exhibit I at ¶¶ 3-4.)

This issue is governed by § 414 of the Restatement (Second) of Torts and comments thereto, as adopted by the SJC. *See Corsetti*, 396 Mass. at 16-18. Under § 414,

> [O]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

7

In order to determine whether sufficient control has been retained, Comment C to § 414 of the Restatement provides the applicable standard:

> It is not enough that [the owner] has merely a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, to prescribe alterations or deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to his operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work his own way.

As discussed in *Foley v. Rust International*, 901 F.2d 183, 184-185 (1st Cir. 1990), "[t]he key issue, according to the Comment, is whether the [contractor] was "entirely free" to do the work in his own way." Cases in other jurisdictions that have examined specific applications of the "retains control" language have followed Comment C. *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 408 (5th Cir. 1989) ("The fact that [the owner] periodically inspected the job site to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control.") (citations omitted); *Thomas v. Internorth, Inc.*, 790 F.2d 1253, 1254 (5th Cir. 1986); *See also, Wilkins v. P.M.B. Systems Engineering, Inc.*, 741 F.2d 795, 799 (5th Cir. 1984); *Flynn v. United States*, 631 F.2d 678, 680 (10th Cir. 1980)."

Here, the language of the prime contract between Waldron and Southbridge is plain and it is abundantly clear that Southbridge did not retain the necessary level of

operational control over the job site and owed plaintiff no duty. The following are the most relevant provisions of the contract:

> Article 2 - Relationship of Owner, Contractor, Subcontractors and Vendors
>
> 2.5 *Owner Not Responsible for Acts of Contractor.* The Owner will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety or security precautions and programs in connection with the Work or performance by Contractor of its warranty obligations, and Owner will not be responsible for Contractor's failure to carry out its Work or its warranty obligations. Owner will not be responsible for the acts or omissions of Contractor, any Subcontractor, or any of their respective agents, performing any of the Work. No inspections or review of documentation, or failure to inspect or review documentation, by Owner shall be a waiver of Contractor's obligations, or be construed as approval or acceptance of the Work or any part thereof.
>
> Article 3 - Contractor's Responsibilities
>
> 3.5 - *Control of the Work.* Subject to the provision of the Agreement, the Contractor shall be solely responsible for all the construction means, methods, techniques, sequences, procedures and safety and security programs in connection with the performance of the Work . . . .
>
> 3.8 - *Safety.* The Contractor shall be responsible for the safety of all persons and property in connection with the Work. The Contractor shall initiate and maintain reasonable safety precautions and programs to conform with applicable provisions of federal, state and local safety laws . . . .

(*See* Exhibit C.)

This case represents a wholly different scenario from those cases in which contract provisions had saddled a party with safety responsibilities, requiring submitting the case to a jury. *See, e.g., Dilaveris v. W.T. Rich Company, Inc.,*

424 Mass. 9 (1996); *Corsetti v. Stone Co.*, 396 Mass. 1, 10 (1985); *Cheschi v. Boston Edison Co.*, 39 Mass. App. Ct. 133, 135-138 (1995). *Compare Foley v. Rust International*, 901 F.2d 183, 184-185 (1st Cir. 1990) (holding that the evidence was insufficient as a matter of law to establish a duty of care owed by defendant).

What should also be noted about the aforementioned cases is that they all dealt with the issue of control as between a general contractor and subcontractor. In all of those cases, the contractor had, in at least the prime contract, taken on some responsibility for job site safety. The question in those cases centered on whether the particular subcontractor at issue was completely free from the control of the general contractor. Here, the relationship between Southbridge and Waldron is more attenuated. The contract documents specifically saddle Waldron with safety responsibility, while not requiring any role of Southbridge with regard to safety. (*See* Exhibit C.)

In addition to the contract language specifically illustrating that Southbridge could not and did not retain the control required to establish liability under *Corsetti*, the facts related to the operation of the job site make it unquestionably clear that Southbridge did not exercise the requisite control. Not only did it not retain any rights to control the site outside of the "general rights" outlined in Comment C to § 414 of the Restatement, it also contracted with a third-party to monitor the prime contract.

10

In June 2000, Southbridge entered into an agreement with Aradia, under the terms of which Aradia was to perform professional services in relation to the project. (*See* Exhibit E.) Under the contract, Aradia was to provide, among others, the following project management services:

a. Weekly site visits to review Client's EPC contractor progress;
b. Review and provide comments on Client's EPC contractor's monthly report;
c. Tracking and review of Client's EPC contractor's design document submittals and coordination of comments from client to client's EPC contractor;
d. Attend monthly progress meetings with Client and Client's EPC contractor to review project issues and schedule status;
e. Review and comment on payment requisitions submitted by the EPC contractor;
f. Change Management – Review, analyze and provide comment on EPC contractor requested change requests;
g. Visit project vendors, as required, and agreed by Client; and
h. Consultant shall provide monthly reports to client.

(*See id.* at § 1(b).)

Southbridge simply had no presence on the site and did not retain the requisite level of control to establish a duty owed to plaintiff. During the project, Southbridge left the procedures and methods of work to Waldron. (*See* Exhibit C at ¶ 3.5.) Abington drafted and instituted an Accident Prevention Plan, which outlined its responsibility for safety on the job site. (*See* Exhibit J.) Even plaintiff admits that it was Waldron – Abington that had the responsibility for job site safety. (*See* Exhibit D at ¶ 3.) There is simply no evidence that any Southbridge employee directed the work at the project on a daily basis.

Nor is there any evidence that Southbridge supplied tools or equipment for the job site. According to Robert Bent of Abington, either Abington supplied tools for the job or plaintiff used his own tools. (*See* Exhibit G at 30:15-22.) No other entity supplied tools for the job site. (*See id.* at 30:23 to 31:1.) Further, all equipment for the job was supplied by Abington. (*See id.* at 31:2-7.)

The plaintiff himself firmly establishes that Southbridge had no control over the job site: Mr. Richards took instruction only from Abington Employees at the job site. (*See* Exhibit at H at 17:12-24.) On the day of the accident Mr. Richards testified that an Abington employee gave him his job assignment. (*See* Exhibit F at 106:21 to 107:2.) There is absolutely no evidence that any Southbridge employee gave plaintiff instruction at the job site. At his deposition, plaintiff could not even state who Southbridge is. (*See id.* at 64:22 to 65:1.) When asked the basis for his stating that Southbridge hoisted the pipes at issue, plaintiff replied "I don't know." (*See id.* at 154:20-22; *see also id.* at 74:2 to 75:10.) At his deposition, plaintiff could not identify who had connected to the rigging the pipes that allegedly injured him. (*See id.* at 77:12-20, 82:3-5.) Without question, however, Robert Bent stated at his deposition that all pipes on the job site were hoisted by Abington employees. (*See* Exhibit G at 33:19-23.)

Finally, in addition to all the evidence that

12

specifically illustrates that Southbridge owed no duty to plaintiff, there is no evidence that – even assuming some duty existed – that Southbridge did anything, or failed to do something, to breach that duty.

The mere fact that plaintiff was injured does not prove a breach of duty by any party. Plaintiff cannot, beyond leveling the general allegation that Southbridge had responsibility for safety, (see Exhibit K at No.13), state what it was that Southbridge did or failed to do that was a cause of his accident. It is a fundamental rule of tort law that a cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between those two elements. *Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739 (1978); *Sores v. Lakeville Baseball Camp, Inc.*, 369 Mass. 974 (1976). Plaintiff is wholly unable to establish any element of causation in this case – even assuming a duty existed in the first place.[1]

### V. Conclusion

Based on the foregoing, Southbridge Power & Thermal, LLC, requests that this Court enter summary judgment in its favor on all counts of the plaintiff's complaint.

---

[1] Plaintiff's claim of failure to warn (Count II) is simply without support. Even assuming Southbridge owed plaintiff a duty of care, nothing unearthed in discovery remotely suggests that Southbridge was aware of but failed to warn plaintiff of some danger. Plaintiff is yet to articulate any facts to support a failure to warn theory.

13

### Rule 7.1(2) Certification of Counsel

Pursuant to Local Rule 7.1(2), counsel certifies that he has attempted in good faith to resolve or narrow the issues presented by this motion without success.

### REQUEST FOR ORAL ARGUMENT

SOUTHBRIDGE POWER & THERMAL, LLC, REQUESTS ORAL ARUGMENT ON ITS MOTION FOR SUMMARY JUDGMENT.

THE DEFENDANT,
SOUTHBRIDGE POWER &
THERMAL, LLC,
BY ITS ATTORNEYS,

DATED: 9/29/05

Anthony M. Campo, BBO# 552093
Keith L. Sachs, BBO# 634025
Boyle, Morrissey & Campo, P.C.
695 Atlantic Ave.
Boston, MA 02111
(617) 451-2000
FAX: (617) 451-5775

CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(a) and/or Sup. Ct. R. 9A, I, Keith L. Sachs, do hereby certify that a copy of the foregoing documents have been served first-class postage prepaid on all parties or their representatives in this action as listed below:

Charlotte E. Glinka, Esq.
Keches & Mallen, P.C.
122 Dean St.
Taunton, MA  02780

SIGNED UNDER THE PENALTIES OF PERJURY THIS 29th DAY OF September, 2005.

_____
Keith L. Sachs, BBO# 634025
Boyle, Morrissey & Campo, P.C.
695 Atlantic Avenue
Boston, MA 02111
(617) 451-2000
FAX: (617) 451-5775

F:\WordDocs\Cases\6292\plead\MSJ MEMO.doc

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

C.A. NO.: 04-CV-40054

GERALD F. RICHARDS,   )
    Plaintiff           )
                        )
v.                     )
                        )
SOUTHBRIDGE POWER & THERMAL, LLC.,  )
    Defendant           )

## DEFENDANT SOUTHBRIDGE POWER & THERMAL, LLC'S, EXHIBITS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**Exhibit A** – July 1998 Lease Southbridge Associates Limited Partnership and Southbridge Power & Thermal, LLC.

**Exhibit B** – April 26, 2005 deposition transcript excerpts of Thomas H. Shepard.

**Exhibit C** – June 6, 2000 EPC Contract between Southbridge Power & Thermal, LLC and Waldron – Abington, LLC.

**Exhibit D** — Plaintiff's Motion to Amend Complaint to Add Party Defendant.

**Exhibit E** – June 9, 2000 Consulting Agreement between Southbridge (under its former name, Acetex Energy Holdings, LLC) and Aradia Management, LLC ("Aradia").

**Exhibit F** – Plaintiff Gerald Richards's April 29, 2005 Deposition Transcript excerpts.

**Exhibit G** – May 9, 2005 Deposition Transcript Excerpts of Robert Bent.

**Exhibit H** – May 9, 2005 Deposition Transcript Excerpts of Timothy A. Davison.

**Exhibit I** – Plaintiff's Complaint.

**Exhibit J** – Accident Prevention Plan.

**Exhibit K** - Plaintiff's Answers to Interrogatories.

                                  THE DEFENDANT,
                                  SOUTHBRIDGE POWER &
                                  THERMAL, LLC,
                                  BY ITS ATTORNEYS,

DATED: 9/29/05

_____
Anthony M. Campo, BBO# 552093
Keith L. Sachs, BBO# 634025
Boyle, Morrissey & Campo, P.C.
695 Atlantic Ave.
Boston, MA 02111
(617) 451-2000
FAX: (617) 451-5775

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(a) and/or Sup. Ct. R. 9A, I, Keith L. Sachs, do hereby certify that a copy of the foregoing documents have been served first-class postage prepaid on all parties or their representatives in this action as listed below:

                Charlotte E. Glinka, Esq.
                Keches & Mallen, P.C.
                    122 Dean St.
                  Taunton, MA  02780

SIGNED UNDER THE PENALTIES OF PERJURY THIS 29 DAY OF _____, 2004.

_____
Keith L. Sachs, BBO# 634025
Boyle, Morrissey & Campo, P.C.
695 Atlantic Avenue

```
Boston, MA 02111
(617) 451-2000
FAX: (617) 451-5775
```